UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TAMMI JO DAVIDSON,  
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:12-cv-683
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 9) and the Commissioner's memorandum in opposition (Doc. 15).

**I. Procedural Background**

Plaintiff filed an application for DIB in April 2009 and an application for SSI in June 2009, alleging disability since April 7, 2009, due to panic attacks, severe anxiety, major depressive disorder, and bulging discs in the lower back. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before Administrative Law Judge (ALJ) Kenneth Wilson. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On July 8, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

2

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since April 7, 2009, the alleged disability onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: lumbar degenerative joint disease; depressive disorder; and an anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform less than a full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The [plaintiff] is capable of lifting up to 10 pounds occasionally and less than 10 pounds frequently; unlimited pushing or pulling within the lifting restriction; sitting for up to 6 hours in an 8-hour workday; and standing or walking about 4 hours in an 8-hour workday; with a sit/stand option, defined as the ability to change positions from sitting or standing for about 1 to 3 minutes up to 3 times during an 8-hour workday. The [plaintiff] can perform frequent stooping, kneeling, crouching, and climbing of ramps or stairs; occasional reaching overhead, defined as not more than 2 hours during an 8-hour workday; but is precluded from work at unprotected [sic] climbing ladders, ropes or scaffolds. The [plaintiff] must avoid concentrated exposure to unprotect[sic] heights and vibrations. Due to mental impairments, the [plaintiff] is able to maintain attention and concentration for 2-hour periods with

3

normal breaks during an 8-hour workday. The [plaintiff] is able to understand, remember and carry out simple instructions, but is precluded from understanding, remembering or carrying out complex instructions. The [plaintiff] is able to interact appropriately with coworkers and supervisors, but is precluded from work involving more than occasional interaction with the general public. The [plaintiff] is able to adapt adequately to changes in work setting.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[3]

7. The [plaintiff] was born [in] . . . 1962 and was 47 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[4]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from April 7, 2009, through the date of [the ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-22).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

---

[3]Plaintiff's past relevant work was as a customer service representative. (Tr. 21).

[4]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative unskilled sedentary occupations such as bench assembler, with 3,600 jobs in the local economy and 1,800,000 jobs in the national economy; dowel inspector, with 1,800 jobs in the local economy and 340,000 jobs in the national economy; and hand trimmer, with 1,400 jobs in the local economy and 112,000 jobs in the national economy. (Tr. 22).

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

5

### D. Specific Errors

The pertinent medical findings and opinions have been adequately summarized in the ALJ's decision and will not be repeated here. (Tr. 16-21). Where applicable, the Court will identify the medical evidence relevant to its decision.

On appeal, plaintiff raises two assignments of error: (1) the ALJ erred in assessing plaintiff's credibility; and (2) the ALJ erred by giving "reduced weight" to the opinion of plaintiff's treating psychiatrist, Dr. Kenneth Tepe, M.D. The Court will consider the assignments of error in reverse order.

**1. The ALJ did not err by discounting the opinion of plaintiff's treating psychiatrist.**

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic

6

techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)[5]). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (citing SSR 96-2p).

Plaintiff contends that the ALJ erred by failing to give controlling weight to the assessment of her treating psychiatrist, Dr. Kenneth Tepe, M.D, in violation of the treating

---

[5] Title 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provision governing the weight to be afforded a medical opinion that was previously found at § 404.1527(d) is now found at § 404.1527(c).

7

physician rule, 20 C.F.R. § 404.1567(c)(2), 419.627(c)(2).[6] (Doc. 9 at 10-11). Plaintiff further contends that even assuming Dr. Tepe's opinion is not entitled to controlling weight, the ALJ failed to weigh the opinion in accordance with the regulatory factors in violation of the "good-reasons requirement." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Dr. Tepe completed two assessments: a Mental Status Questionnaire dated March 11, 2010 (Tr. 712-715), and a Medical Assessment of Ability to do Work Related Activities dated March 25, 2011 (Tr. 832-835). In the March 2010 questionnaire, Dr. Tepe reported that he had first seen plaintiff on December 29, 2009, and had last seen her on March 8, 2010. (Tr. 713). Dr. Tepe diagnosed plaintiff with panic disorder and major depressive disorder. (Tr. 714). Dr. Tepe opined that plaintiff was not capable of managing any benefits that may be due because she was easily overwhelmed and had been taken care of by her father until he died; she was able to follow directions but needed constant reassurance and guidance; her ability to maintain attention was compromised by obsessive thinking; and her ability to sustain concentration, persist at tasks, and complete the tasks in a timely manner was limited. Dr. Tepe opined that plaintiff was unable to interact with others on a regular basis due to panic attacks and that she had been struggling with activities of daily living since her father passed away. Dr. Tepe also stated that plaintiff had "a long history of losing jobs due to her extreme anxiety. She would often run into the bathroom several times a day in order to help calm herself and prevent further panic attacks." (*Id.*).

In the March 2011 assessment, Dr. Tepe opined that plaintiff's ability to perform a number of work-related activities was "poor," meaning her ability to function in that area was

---

[6] Plaintiff does not allege that the ALJ erred in assessing the medical source opinions related to her physical impairments. (Doc. 9). Accordingly, the Court has confined its analysis of the second assignment of error to plaintiff's mental impairments.

8

"seriously limited, but not precluded." (Tr. 832). Dr. Tepe assessed the following abilities as "poor":

- Plaintiff's ability to relate to co-workers.

- Plaintiff's ability to deal with the public as she becomes easily overwhelmed in public.

- Plaintiff's ability to understand, remember and carry out complex job instructions.

- Plaintiff's ability to understand, remember and carry out detailed, but not complex, job instructions.

- Plaintiff's ability to understand, remember and carry out simple job instructions.

- Plaintiff's ability to behave in an emotionally stable manner.

- Plaintiff's ability to relate predictably in social situations.

(Tr. 833-34). Dr. Tepe rated plaintiff's ability to maintain personal appearance as "fair," meaning her ability to function in that area was "limited but satisfactory," and plaintiff's ability to demonstrate reliability as "fair-poor." (Tr. 832, 834). In support of his assessment, Dr. Tepe stated that plaintiff is unable to handle multiple tasks, and she has panic attacks that are related to interacting with others in public. (Tr. 833). Dr. Tepe reported that plaintiff would often become anxious and take multiple bathroom breaks to cope with her anxiety, and she was fired from five places of employment in a row prior to her last employment in 2009. (*Id.*). Dr. Tepe described the limitations on her ability to understand and remember work instructions as follows: "Often tell[s] her supervisor she 'can't do this'," and "Panic and having someone help with basic and complex tasks." (Tr. 834). Dr. Tepe described plaintiff's limitations in the area of making personal and social adjustments as follows: "Client is often anxious which leads to compulsive behaviors. She is easily irritated and has trouble completing some activities such as going to the

9

store, bank, appointments." (Tr. 834). Dr. Tepe stated that although plaintiff had not been "examined in a work type setting . . . she struggles with demands and rules from her place of residence" (the YWCA, where plaintiff moved for financial reasons after losing her job in September 2009 - *see* Tr. 718) (Tr. 835). As of the date of his report, Dr. Tepe opined that plaintiff could manage benefits in her own best interest as she was usually very anxious upon receipt of her bills and paid them immediately upon receipt. (*Id.*). The VE testified at the ALJ hearing that an individual with the limitations assessed by Dr. Tepe in this evaluation would not be able to maintain employment. (Tr. 71).

The ALJ gave "reduced weight" to the opinions of Dr. Tepe. (Tr. 21). The ALJ determined that: (1) the course of treatment Dr. Tepe pursued was not "consistent with what one would expect if the claimant were truly disabled. . . ."; (2) Dr. Tepe's opinion "contrast[ed] sharply with the other evidence of record"; (3) Dr. Tepe's opinion was inconsistent with his own treatment notes, which documented the effectiveness of psychotropic medication in alleviating plaintiff's symptoms; and (4) Dr. Tepe's opinion appeared to rest in part on plaintiff's own description of her functional limitations as to her past work activities, which consisted of jobs "in fast paced and high-stress environments, inconsistent with the above residual functional capacity." (*Id.*).

The reasons provided by the ALJ constitute "good reasons" for declining to give controlling or greater weight to the functional capacity assessment of plaintiff's treating psychiatrist, Dr. Tepe. *See Cole*, 661 F.3d at 937. The ALJ's finding that Dr. Tepe's opinion is not supported by his own treatment notes is substantially supported by the record. A review of the treatment notes prepared by Dr. Tepe and by Kelly Cole, LSW, from Community

Behavioral Health shows that although plaintiff continued to experience symptoms of depression and anxiety throughout the period of alleged disability, the psychotropic medications prescribed for her were effective in alleviating plaintiff's symptoms. (Tr. 21). Dr. Tepe saw plaintiff approximately once a month between December 2009 and May 2011, and Ms. Cole counseled plaintiff approximately twice a month. (Tr. 681-707, 752-760, 887-964). When she was first evaluated in December 2009, plaintiff reported feeling anxious every day and having panic attacks throughout the day when working and three to four attacks at the present time. (Tr. 688). In January 2010, Dr. Tepe reported that plaintiff suffered from "recurrent vegetative depressions and finds the Remeron helpful." (Tr. 704). He reported that plaintiff suffered from anxiety in social situations or situations involving training, evaluation or performance such as occurs in jobs, and that her inability to think straight in such situations was the cause of her current unemployment. (Tr. 704). However, Dr. Tepe also reported that plaintiff was doing "reasonably well" on her current medication, she had not had a recurrence of her "obvious depression," and she wanted to stay on her current medication, to which he was agreeable. (Tr. 705). According to Dr. Tepe's treatment notes from March, April and May of 2010, plaintiff's medications were "effective" in controlling plaintiff's symptoms. (Tr. 760 - 3/10- "Medications are effective and she will continue them as written"; Tr. 757-58 - 4/10- although dealing with physical problems, plaintiff was doing "adequately" and was "happy with her medications," which were to be continued as written; Tr. 755-756 - 5/10- plaintiff was "happy with her medication and has no side effects," and medication was to be continued as written." (Tr. 756). Subsequent treatment notes indicate that plaintiff continued to report that her medications were effective at controlling her anxiety and depression symptoms throughout the course of her treatment with Dr. Tepe and Ms. Cole.

Treatment notes from July 2010 report that plaintiff seemed "to be doing quite well," her medications were "doing well," and she was pleased with her medications. (Tr. 957-58). Treatment notes from October 2010 reflect that plaintiff's medications were working "fine" and plaintiff was doing "fairly well." (Tr. 941-42). In December 2010, plaintiff was reported to be "doing very well in terms of mental status." (Tr. 921-22). In February 2011, plaintiff was reportedly doing "fine" apart from mood swings related to surgery she had undergone, and her medications were to remain as written since she was doing well. (Tr. 906-908). Dr. Tepe assured plaintiff at that time that new mood changes related to the surgery did not mean her medication "wasn't working anymore." (Tr. 907). In March 2011, plaintiff was reported to be doing very well, especially given her physical issues. (Tr. 899). These reports showing that plaintiff's psychological symptoms were effectively controlled by her medication over a sustained period of time substantially support the ALJ's finding that Dr. Tepe's opinions of total disability are not supported by his own treatment notes.

In addition, the ALJ reasonably decided that Dr. Tepe assessed plaintiff's mental limitations based largely on her reported inability to function in her past jobs, which were fast paced and high stress. (Tr. 21). In his assessment, Dr. Tepe reported that plaintiff became overwhelmed in her prior jobs because she was unable to handle multiple tasks, she had panic attacks related to interacting with others in public, she would often become anxious and take multiple bathroom breaks to cope with her anxiety, and she would panic and require help with basic and complex tasks. (Tr. 833-34). However, state agency reviewing psychologist Dr. Robelyn Marlow, Ph.D., pointed out in her assessment that plaintiff's past work was in customer service in a call center, where plaintiff reportedly had sales goals she was required to meet in a

high pressure environment. (Tr. 718). The ALJ reasonably determined that Dr. Tepe's treatment notes did not demonstrate an inability to perform jobs consistent with the RFC finding, which excluded the type of fast-paced and high-stress jobs plaintiff had performed in the past. (Tr. 15).

Thus, the ALJ gave "good reasons" for deciding that Dr. Tepe's opinion was not supported by his own treatment notes. In addition, substantial evidence supports the ALJ's finding that Dr. Tepe's opinion is inconsistent with the weight of the medical evidence of record. Instead of crediting Dr. Tepe's opinion, the ALJ gave "significant weight" to the opinions of the one-time examining consultant, Dr. Paul Deardorff, Ph.D. (Tr. 591-598) and the non-examining state agency psychologists, Dr. Kristen Haskins, Psy.D. (Tr. 607-624) and Dr. Marlow (Tr. 718), that plaintiff had only mild to moderate limitations in her ability to perform day-to-day work activities. (Tr. 20). Dr. Marlow reviewed the record and issued a report in March 2010 affirming the mental RFC assessment of Dr. Haskins dated October 27, 2009[7]. (Tr. 718). Dr. Haskins gave weight to the opinion of the consultative examiner, Dr. Deardorff, that plaintiff was moderately impaired in her ability to relate to others, concentrate, and handle stress and was mildly impaired in her ability to understand, remember and follow directions. (Tr. 609). Dr. Haskins concluded that plaintiff could perform simple and moderately complex tasks in an environment without strict production or time requirements where she has only superficial interaction with others. (*Id.*). Dr. Marlow opined that plaintiff's anxiety was connected to activities in the workplace and that her past jobs were in fast paced and high stress environments, but that she is able to handle basic tasks and communicate one-on-one. (Tr. 718). Dr. Marlow's opinion is supported by plaintiff's reports

---

[7]Dr. Haskins also completed a Psychiatric Review Technique and found that plaintiff was moderately restricted in her activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence or pace, and she had experienced one or two episodes of decompensation, each of an extended duration. (Tr. 621).

concerning the effectiveness of her psychotropic medications in controlling her symptoms and by Dr. Haskins' assessment of plaintiff's work-related functional limitations (Tr. 607-608). Dr. Marlow's opinion is also supported by Dr. Deardorff's assessment of plaintiff's work-related mental abilities. Dr. Deardorff found that plaintiff's mental ability to relate to others, including fellow workers and supervisors, is moderately impaired; her mental ability to understand, remember and follow simple instructions is mildly impaired; her mental ability to maintain attention, concentration, persistence and pace is moderately impaired; and her mental ability to withstand the stress and pressures associated with day-to-day work activities is moderately impaired. (Tr. 592-97). These reports substantially support the ALJ's RFC finding limiting plaintiff to work that requires her to understand, remember and carry out simple instructions and which involves no more than occasional interaction with the general public. (Tr. 15).

The ALJ adequately explained why Dr. Tepe's opinion was not well-supported by his own treatment notes, and the ALJ identified other substantial evidence in the case record that is inconsistent with Dr. Tepe's opinion. The ALJ thoroughly reviewed the evidence of record and explained his reasons for giving Dr. Tepe's opinions less than controlling weight and instead crediting the opinions of the consultative examining psychologist and the state agency reviewing psychologists. Plaintiff's first assignment of error should be overruled.

**2. The ALJ did not err in assessing plaintiff's credibility.**

Plaintiff contends that the ALJ committed a number of errors in assessing her credibility and that the ALJ's credibility determination as it related to her mental impairments is not supported by substantial evidence. (Doc. 9 at 2-9). The Commissioner alleges that the ALJ thoroughly considered the factors pertinent to plaintiff's credibility and substantial evidence

14

supports his determination that plaintiff is not fully credible. (Doc. 15 at 5-11).

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Title 20 C.F.R. §§ 404.1529, 416.529 and Social Security Ruling 96-7p describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.529(c); SSR 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with

the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)).

Here, the ALJ's credibility determination is substantially supported by the record and is entitled to deference. The ALJ made extensive findings regarding plaintiff's credibility in connection with his determination that plaintiff retained the RFC to perform sedentary work with both exertional and nonexertional restrictions. (Tr. 16-19). The ALJ determined that although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Tr. 16).

Although plaintiff does not specifically challenge the ALJ's credibility determination as it relates to her physical complaints, whether plaintiff exaggerated her complaints of back pain certainly bears on her overall credibility. The ALJ reasonably relied on a number of factors related to plaintiff's complaints of back pain to discount her credibility. These included a lack of objective medical evidence documenting severe back pain and the absence of abnormal findings on examination. (Tr. 16, citing Tr. 602). In addition, plaintiff stated that medication has been effective at alleviating her back pain, and her treating physician reported that she was tolerating her medication well with no side effects. (*Id.*, citing Tr. 632, 838). Further, evidence that plaintiff's primary care physicians were reluctant to continue to prescribe narcotic pain medication absent diagnostic testing or plaintiff's consultation with a specialist or physical therapist, together with plaintiff's failure to pursue further treatment for her back pain, supports the ALJ's

conclusion that plaintiff's back symptoms may not have been as limiting as plaintiff alleged. (Tr. 18, citing Tr. 466, 731, 735).

The ALJ likewise was entitled to discount plaintiff's psychological symptoms on the ground the objective medical evidence was not consistent with her allegations concerning the severity of her mental impairments.[8] The ALJ acknowledged that plaintiff had received several types of treatment for her allegedly disabling symptoms, which would normally weigh in favor of a disability finding. (Tr. 17). However, as explained in connection with plaintiff's second assignment of error, the record shows the treatment, including her psychotropic medications, was generally successful in effectively controlling her symptoms of anxiety and depression. (*Id.*).

In addition, the ALJ reasonably determined that plaintiff's complaints of disabling symptoms were not entirely credible based on her activities of daily living. The record demonstrates that despite plaintiff's complaints of disabling anxiety, depression and back pain, she is able to independently attend to her personal hygiene needs, go shopping, prepare food, drive, and perform some household chores. (Tr. 19, citing Tr. 717, 720).

Finally, the ALJ was entitled to discount plaintiff's credibility based on inconsistent reports of drug and alcohol use. (Tr. 19, citing Tr. 393, 665). Although plaintiff denied drug and alcohol use when admitted to the hospital in September 2005 (Tr. 393), a December 2009 record reports occasional alcohol use and rare marijuana use last occurring in 2006. (Tr. 665). Plaintiff vaguely alleges that the December 2009 notation was mistaken but offers no evidence to support her contention or to show that the ALJ was aware that a mistake had occurred. (Doc. 9 at 9).

---

[8]The ALJ set forth plaintiff's GAF scores in connection with the credibility assessment (Tr. 16), but the ALJ did not draw any conclusions from the scores due to a transcription error at Tr. 16-17. Accordingly, the Court does not draw any inferences from the ALJ's discussion of the GAF scores.

Accordingly, substantial evidence supports the ALJ's decision to discount plaintiff's complaints of allegedly disabling back pain and psychological symptoms. The ALJ's credibility determination is therefore entitled to deference. Plaintiff's first assignment of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 10/15/13

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TAMMI JO DAVIDSON,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:12-cv-683
Barrett, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objection **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).